## The President, Directors and Company of the Thames Bank *vs.* The Commissioners of the Channel of the River Thames.

The charter of incorporation of The President, Directors and Company of the Thames Bank, having provided, that immediately after its organization, the directors shall purchase and cause to be transferred to said bank, the stock of all such members of the Norwich Channel Company, as shall sell and transfer their stock, at twenty dollars a share; that the bank, within two years from the first organization thereof, shall expend three thousand dollars, in deepening the channel and improving the navigation of the river Thames; that three commissioners shall be appointed to settle and adjust the accounts of the expenditures aforesaid, and of the tolls received therefrom, contained the following provision: that "if, at any time, after the transfer of all said channel stock to said bank, by reason of the improvement in the navigation of said river, the amount of tolls collected shall be more than sufficient to defray the annual expenditures by this act required to be made, said excess shall be first applied, to refund to said

The Thames Bank *v.* Commissioners of Norwich Channel Company.

bank the sums which shall have been expended, under this act, beyond the amount of tolls received, allowing interest to said bank, on all expenditures for the purpose aforesaid, at the rate of five per cent. per annum, only; it being hereby provided, that said principal sum of three thousand dollars, and the amount that shall be paid for said channel stock, shall not, at any time, be refunded to said bank. And should said tolls be more than sufficient to pay as aforesaid, then, and in that case, said excess shall, at the discretion of the directors, be expended, in still further deepening the channel, and improving the navigation of said river; or if not so applied, the commissioners may, from time to time, reduce and vary the rates of toll to be received by said bank, so as to prevent any excess as aforesaid." On a petition for a *mandamus*, requiring the commissioners, appointed under their charter, to allow said bank, in their account of expenditures and tolls, interest at the rate of five per cent. per annum, on the sum of $5,000, made up of $2,000 paid for said channel stock, and $3,000 expended in deepening the channel of said river; it was held, that only the annual expenditures, made after the expiration of two years from the organization of the bank, with five per cent. interest thereon, were to be refunded to said bank, out of the annual excess of tolls, above the annual excess of expenditures, and that said $5,000 was in the nature of a *bonus*, upon which the bank was not entitled to interest.

THIS was a petition for a *mandamus*, to E. C. Chapman, C. D. Fillmore and William Clegg, commissioners appointed under the act incorporating the Thames Bank, "to see that the provisions of said act, relating to the deepening and improvement of the channel of the river Thames, are carried into full effect, and annually to settle and adjust the accounts of the expenditures made in the same, and of the tolls received therefor."

The petition stated, that in 1825, the petitioners were incorporated by the legislature, with banking privileges. Prior to that time, the Norwich Channel Company had been incorporated, with a capital stock, consisting of one hundred shares of one hundred dollars each, for the purpose of deepening the channel of the river Thames, and improving the navigation of the same, with power to collect certain tolls prescribed by said act, from all vessels drawing more than seven feet of water, and passing through said channel; upon which stock the shareholders were entitled to receive, from

said tolls, to the amount of ten per cent. per annum, the balance of said tolls being required to be expended for the improvement of said channel. By their charter, the petitioners were required, immediately after their organization, to purchase and cause to be transferred to them, the said shares of stock of said Channel Company, in case the same could be purchased, at twenty dollars per share, and thereupon the petitioners were to succeed to the rights and privileges of said Channel Company, excepting that they were required to reduce the rates of toll to be by them collected, fifty per cent. It was provided, by said charter, that there should be annually appointed by the governor, with the approbation of the senate, three commissioners, whose duty it should be, to see that the provisions of said act, relating to the deepening and improvement of the said channel, were carried into effect, and annually to settle and adjust the account of the expenditures made in the same, and the tolls received therefrom; also, that said bank, after the expiration of two years from their first organization, should not exercise any of the banking privileges granted by their said charter, unless, within that period, the sum of three thousand dollars, and the tolls received from the channel, during said time, should be actually expended in deepening the channel, and improving the navigation of said river Thames; and it was also made the duty of the bank, to cause to be expended, for the purpose aforesaid, each and every year after the expiration of said two years, the sum of five hundred dollars, or such part thereof as should be necessary to give a depth of at least ten feet of water in said channel, at common and ordinary tides.

If, at any time after the transfer of all said channel stock to said bank, the amount of tolls collected should be more than sufficient to defray the annual expenditure, by the said act required to be made, said excess was to be first applied to refund to said bank the sums which had been expended under said act, beyond the amount of tolls received, allow-

ing interest on all such expenditures, at the rate of five per cent. per annum only, it being further provided, that said principal sum of three thousand dollars, and the amount paid for said channel stock, should not, at any time, be refunded to said bank.

Said bank was duly organized, as early as June, 1825. Previous to that time, all said shares of channel stock were purchased by, and transferred to, the petitioners, at the price of twenty dollars per share ; and during said period of two years, the sum of three thousand dollars, and all said tolls, collected within that time, were actually expended, as required by the charter of the bank, in deepening said channel, and the improvement of the navigation of the same ; and during each year after the expiration of said two years, the further sum of five hundred dollars had been expended for the same purposes. The petitioners then alleged, that they had kept an accurate account of their receipts and expenditures, connected with said channel, charging the interest of five per cent. per annum ; that their account had been annually made out and presented to said commissioners ; that it embraced said sum of $2,000 paid for said channel stock, and said sum of $3,000 paid for deepening said channel, and improving the navigation of said river,—and had been by them adjusted and allowed, to the first day of January, 1852 ; that since that date, the petitioners had presented to said commissioners, a correct annual statement and account of their receipts and expenditures, with reference to said channel,—by which it was shown, that, since said last date, their receipts were $1,380.16 more than their expenditures ; but that certain persons interested in the navigation of said river, having claimed that the petitioners were not entitled to the allowance of five per cent. per annum, upon the two thousand dollars paid for said channel stock, and upon the three thousand dollars, expended in deepening said channel and improving the navigation of said river, the

commissioners declined to allow said charge of five per cent. per annum, upon said last mentioned sums, unless the superior court should so order and direct.

The petition prayed for notice to the commissioners, and a writ of *mandamus*, requiring them to settle and adjust said accounts, as claimed by them. The defendants appeared, and, by agreement of the parties, the case was reserved for the advice of this court.

*Strong* and *E. Larned*, for the petitioners, contended, That the Thames Bank is entitled to charge interest, at five per cent. per annum, on the $5,000 expended under the provisions of its charter.

By the express terms of the fourteenth section it is allowed. Private Acts, p. 151, 512. The provision, that the principal sum is not to be refunded, does not imply, that *interest* should not be allowed. The term *principal* sum indicates, that interest is to be calculated on it, and only the $5,000 is to be excepted. The Channel Company has this right, and the bank succeeded to all the rights of said company. *Thames Bank* v. *Lovell*, 18 Conn. R., 500. The $5,000, expended by the bank, was in the place of the channel stock, not a bonus.

*Ed. Perkins*, for the defendants, contended, 1. That the allowance of interest, in the fourteenth section of the charter of the bank, is confined to those expenditures of the bank, which, by the same section, are to be refunded out of the excess of tolls. It is not to be presumed, that the legislature designed, that the bank should receive interest on those expenditures which they are compelled to make, and which it is expressly provided "shall never be refunded." If any other construction is adopted, it involves the absurdity of allowing the bank interest on their whole expenditures, without reference to their receipts from tolls. It will even allow them interest on the very tolls received from 1825 to 1827, which they are required to expend, and which are not

to be refunded. The legislature evidently supposed, that the bank would be entitled to the ordinary rate of interest, at six per cent., on all sums which were to be refunded, and the whole sentence, as to the allowance of interest, is introduced for the mere purpose of limiting the rate to five per cent. This is evidenced, by the use of the word *"only,"* at the end of the sentence.

2. Sections 12, 13 and 14 of the charter, were designed to impose on this bank a bonus, in favor of a valuable public interest,—the improvement of the channel of the river Thames. The state has no right to impose tolls on this river, except for the purpose of improving its navigation. *Thames Bank* v. *Lovell,* 18 Conn. R., 500. In construing any doubtful expressions in this section, (if there are any such,) the intent should have a controlling influence, and the benefit of the doubt be given, in favor of the freedom of the river, or its further improvement.

ELLSWORTH, J. The question in this case arises on the construction of the fourteenth section of the plaintiffs' charter. Very little aid is to be derived from any other section, except, perhaps, the thirteenth, though the ninth, tenth and eleventh have some bearing on it; nor from the charter of the Norwich Channel Company.

The fourteenth is in these words: "If, at any time after the transfer of all said channel stock to said bank, by reason of the improvement in the navigation of said river, the amount of tolls collected shall be more than sufficient to defray the annual expenditures, by this act required to be made, said excess shall be first applied, to refund to said bank the sums which shall have been expended, under this act, beyond the amount of tolls received, allowing interest to said bank, on all expenditures for the purpose aforesaid, at the rate of five per cent. per annum only, it being hereby provided, that said principal sum of $3,000, and the amount

that shall be paid for said channel stock, shall not, at any time, be refunded to said bank; and should said tolls be more than sufficient to pay as aforesaid, then, and in that case, said excess shall be expended in still further deepening the channel, and improving the navigation of said river; or if not so applied, the commissioners may, from time to time, reduce and vary the rates of toll to be raised by said bank, so as to prevent any excess, as aforesaid."

We think this section has reference to annual expenditures only, such as are required, by the twelfth section of the charter, to be made after the expiration of two years. This annual expenditure may be refunded to the company, with five per cent. interest; and is to be refunded out of the annual excess of tolls, above the annual expenditures. The four thousand dollars are never to be refunded; they are to be a bonus for the bank charter. We can not believe the legislature intended to make this sum irredeemable, and yet put it on interest, at five per cent. per annum, for *all time*, an endless burden on the navigation of the river, and this too, when they had so expressly and emphatically declared, "the $5,000 shall in no event be refunded." Besides, the word "expenditure," if intended to comprehend the $5,000, will, for the same reason, comprehend the gross tolls collected and expended before the channel stock was purchased; for the tolls expended in improving the channel of the river, are "sums expended under this act," and, on this hypothesis, they are to be refunded with interest; whereas it is quite certain, only the annual excess of disbursements, above the annual tolls, *after* the channel stock has been purchased, is to be refunded. Hence, to ascertain this difference, commissioners are to be annually appointed by the legislature, and interest is to be computed on nothing else. The language of the eleventh section, at the close, is: "The commissioners shall *annually* settle and adjust the accounts of the expenditures made in the same, [the river,] and of the

tolls received therefrom." This is the only sum to be re-funded.

We advise that no *mandamus* be issued.

In this opinion, the other judges concurred, except WAITE, J., who, being related to some of the stockholders of the Thames Bank, did not sit in this case.

*Mandamus* not issued.